UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEVON SHIVERS,

                    Plaintiff,                         Case No. 2:25-cv-4

v.                                                     Honorable Phillip J. Green

UNKNOWN SIMPSON, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.12.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Simpson, Carlson, Bolton, Negrinell, Arsenalt, Huss and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Schroeder.  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Minthorn: all official capacity claims, Eighth and Fourteenth Amendment claims, any claims under the Prison Rape Elimination Act ("PREA"), and Plaintiff's First Amendment claims other than a claim for First Amendment retaliation based upon the July 28, 2022, misconduct report for "smuggling.," Plaintiff's First Amendment retaliation claim against Defendant Minthorn individually related to the July 28, 2022, misconduct report for "smuggling" remains in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.  Plaintiff sues the following MBP staff in their individual and official capacities: Correctional Officer Unknown Simpson, Lieutenant Unknown Minthorn,[2] Registered Nurse Unknown Carlson, Grievance Coordinator Unknown Bolton, Registered Nurse Unknown

---

[2] Defendant "Lt. Minthorn" is listed six separate times in Plaintiff's list of parties (ECF No. 1, PageID.3–5); however, Plaintiff's complaint does not appear to suggest that these listed Defendants are in fact three separate people.  Accordingly, the Court will address Defendant Minthorn as a single Defendant.

Negrinell,[3] Lieutenant Unknown Arsenalt, Warden/Superintendent Erica Huss, and Warden/Superintendent Sara Schroeder.

Plaintiff alleges that, on June 2, 2022, Defendant Simpson issued Plaintiff a "false ticket" for disobeying a direct order.  (ECF No. 1, PageID.10.)  Defendant Minthorn "heard [Plaintiff] on the ticket," and stated that Plaintiff continued "to be a management problem for staff."  (*Id.*)

On June 20, 2022, Plaintiff was using a sheet to cover the toilet area of his cell while Plaintiff was using the bathroom.  (*Id.*)  Defendant Minthorn twice stated, "I want to see you wipe your that [sic] black ass f*** boy take the sheet down."  (*Id.*)  The following day, Plaintiff wrote a medical kite regarding Defendant Minthorn's statements and gave it to Defendant Carlson.  (*Id.*)  Defendant Carlson did not report Plaintiff's PREA complaint.  (*Id.*)  On July 12, 2022, Plaintiff wrote a letter to Defendant Bolton requesting the "identifier number" for his PREA complaint.  (*Id.*)

On July 17, 2022, Plaintiff wrote a medical kite concerning Defendant Minthorn's June 20, 2022, comments, but never received an interview.  (*Id.*)  The following day, Plaintiff wrote to Defendant Bolton requesting a Step II grievance form for grievance 2022-0929-03e, but did not receive it.  (*Id.*)  Plaintiff then wrote down Defendant Minthorn's comments a third time and provided them to Defendant Negrinell.  (*Id.*)  Defendant Negrinell did not report Plaintiff's complaint.  (*Id.*)

---

[3] Plaintiff refers to this Defendant as "Negrinell," "Negreinell," and "Nigriney" at various points within the Complaint.  Because Plaintiff first identifies this Defendant as Negrinell, the Court will do the same.

On July 28, 2022, Defendant Minthorn issued Plaintiff a second false misconduct report for "smuggling" for "having a 'sweet fusion tea bag' in [his] cell while in segregation." (*Id.*)  Defendant Arsenalt reviewed the misconduct ticket and "never fixed [Defendant] Minthorn's mistake." (*Id.*, PageID.11.)

During the time scheduled for Plaintiff's housing unit to use the showers, Defendant Minthorn told Plaintiff, "Yea I get to see that ass now.  You can turn in all the PREAs you want to.  You see ain't no one seen you on them.  So every time you write one [they're] going to let me know and I'll be over here to write you a ticket." (*Id.*)  Defendant Minthorn then watched Plaintiff shower.  (*Id.*)  Plaintiff submitted a medical kite to Defendant Carlson but she did not respond.  (*Id.*)

On August 3, 2022, Plaintiff wrote to Defendant Huss asking for a Special Problem Offender Notice ("S.P.O.N."), but Plaintiff did not receive a response.  (*Id.*)

On another occasion, Defendant Minthorn stopped by Plaintiff's cell and stated, "Hey Shivers, you like how I told you I can do anything to you and get away with it. I'll see you at showers." (*Id.*)  Plaintiff submitted a medical kite to Defendant Negrinell, but Defendant Negrinell did not respond.  (*Id.*)  Plaintiff also wrote to Defendant Huss regarding Defendant Minthorn's statements on August 4, 2022.  (*Id.*) Plaintiff did not receive a response from Defendant Huss.  (*Id.*)

Again, Defendant Minthorn visited Plaintiff's cell, saying, "Prisoner Shivers I'm going to get what I want.  You bending over spreading them a** cheeks if not you'll miss showers again." (*Id.*)  Plaintiff submitted a PREA complaint.  (*Id.*)

Finally, on August 24, 2022, Plaintiff wrote to Defendant Schoeder to explain "everything that had happened" and that he was transferred on August 17, 2022. (*Id.*)  Plaintiff did not receive a response.  (*Id.*)

Based on the foregoing allegations, Plaintiff states that he intends to bring claims for violation of his First, Eighth, and Fourteenth Amendment rights.  (*Id.*, PageID.13.)  He seeks declaratory and monetary relief.  (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.    Although  the  plausibility  standard  is  not  equivalent  to  a  "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is

entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (ECF No. 1, PageID.3–5.)  A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

8

Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

9

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at MBP, which is where he avers that Defendants are employed. Plaintiff's request for declaratory relief does not relate to an ongoing violation and is not prospective. Thus, he cannot maintain his claims for declaratory relief against Defendants in their official capacity.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly,

Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.    Supervisory Liability

Plaintiff brings claims against Defendants Huss and Schroeder, who he identifies as Wardens/Superintendents of MBP. Government officials, such as Defendants Huss and Schroeder, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way

directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee,* 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts that would plausibly suggest that Defendants Huss and Schoeder authorized, approved, or knowingly acquiesced in any unconstitutional conduct. Therefore, Plaintiff fails to state a claim against Defendants Huss and Schroeder arising out of their supervisory roles.

### C.    First Amendment

#### 1.    Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the

12

defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment.").  Here, Plaintiff references making the following written complaints regarding alleged sexual harassment by Defendant Minthorn: medical kite given to Defendant Carlson on June 21, 2022; July 17, 2022, medical kite placed in the G-unit mailbox; July 18, 2022, written communication given to Defendant Negrinell; August 2, 2022, medical kite given to Defendant Carlson; August 2, 2022, written request for a S.P.O.N. to Defendant Huss; August 2, 2022, medical kite given to Defendant Negrinell; August 4, 2022, written communication to Defendant Huss; August 5, 2022, PREA complaint without an identified recipient; August 24, 2022, written communication to Defendant Schroeder following Plaintiff's transfer from MBP.  (ECF No. 1, PageID.10–11.)  At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### b.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

### *Defendant Minthorn*

Plaintiff alleges that he submitted written complaints against Defendant Minthorn in June and July of 2022, that Defendant Minthorn issued Plaintiff a "false misconduct report" on July 28, 2022, and on August 2, 2022, Defendant Minthorn told Plaintiff, that "every time [Plaintiff] write[s] [a PREA complaint]" MBP staff would inform Defendant Minthorn and Defendant Minthorn would issue Plaintiff a misconduct ticket. (ECF No., 1, PageID.11.) Taking these allegations as true as is required at this stage, Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation based upon Defendant Minthorn's adverse action of writing the July 28, 2022, misconduct report for "smuggling."

However, Plaintiff's complaint fails to plausibly suggest that Defendant Minthorn's remaining conduct, including his June 20, 2022, August 2, 2022, and August 3, 2022, comments, were motivated by retaliatory animus. According to

14

Plaintiff's complaint, Defendant Minthorn began his alleged verbal harassment toward Plaintiff before Plaintiff engaged in any alleged protected conduct and there is nothing to indicate that Defendant Minthorn's continued similar comments were motivated by Plaintiff's complaints. Thus, to the extent that Plaintiff seeks to bring claims of First Amendment retaliation based upon these comments, Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Therefore, any First Amendment retaliation claims against Defendant Minthorn premised upon actions other than the July 28, 2022, misconduct report will be dismissed for failure to state a claim.

### *Remaining Defendants*

Plaintiff also brings claims of First Amendment retaliation against the remaining Defendants. However, Plaintiff has not alleged facts that would indicate that any other Defendant engaged in an adverse action against Plaintiff following

Plaintiff's protected conduct, let alone that any other Defendant possessed retaliatory animus toward Plaintiff.  At most, Plaintiff alleges that the remaining Defendants failed to respond to Plaintiff's written requests and complaints.  However, as discussed above, denying or refusing to respond to Plaintiff's complaints alone does not state a claim under § 1983.  Accordingly, the Court will dismiss Plaintiff's claims of First Amendment retaliation against the remaining Defendants.

### 2.    Handling of Grievances and Complaints

To the extent alleged, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances or their failure to respond to Plaintiff's complaints.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g.*,

*Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).  In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim against Defendants based on their handling of Plaintiff's grievances and complaints.

### D.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot

17

every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who

actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    False Misconducts

Plaintiff alleges that Defendants Simpson and Minthorn issued Plaintiff false misconduct reports.  Plaintiff does not provide the Court with any facts regarding the disposition of the reports, or any sanctions imposed as a result.

The filing of a false misconduct report alone does not constitute punishment under the Eighth Amendment.  *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001).  Plaintiff, therefore, cannot maintain an Eighth Amendment claim premised upon his receipt of false misconduct reports.

### 2.    Verbal Harassment

Plaintiff alleges that Defendant Minthorn verbally harassed Plaintiff with sexually suggestive comments.  Plaintiff also alleges that Defendant Huss failed to issue a S.P.O.N. upon Plaintiff's August 3, 2022, request.  The Court will liberally construe this allegation to raise a claim that Defendant Huss failed to protect Plaintiff from subsequent comments by Defendant Minthorn.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642

19

(7th Cir. 2012) (discussing abuse by guards).  However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions.  *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation.  *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made

an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, considering the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that Defendant Minthorn made inappropriate sexual comments toward Plaintiff on two occasions. The Court does not minimize Plaintiff's experience; however, nothing in the complaint suggests that Defendant Minthorn physically touched Plaintiff, or that Plaintiff reasonably feared sexual abuse. And Defendant Minthorn's comments, while offensive and unprofessional, do not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96. Accordingly, for these reasons, Plaintiff's Eighth Amendment claims against Defendants Minthorn and Huss regarding Defendant Minthorn's sexual remarks will be dismissed for failure to state a claim.

### 3.    Medical Care

Plaintiff alleges that he included his reports of Defendant Minthorn's behavior within medical kites provided to Defendants Carlson and Negrinell.  The Court will liberally construe Plaintiff's complaint as raising claims concerning medical care.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle*, 429 U.S. at 103–04.  The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well.  *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, the Court need not reach the subjective prong as Plaintiff has not alleged any medical need, let alone one posing a substantial risk of serious harm. Because Plaintiff fails to provide the Court with sufficient facts to state a plausible claim, any Eighth Amendment claim regarding medical care will be dismissed.

## E. Fourteenth Amendment

### 1. False Misconduct Reports

Plaintiff contends that he received two false misconduct reports. The Court will construe Plaintiff's complaint as raising a Fourteenth Amendment due process claim premised upon the receipt of each report.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson*

*v. Austin*, 545 U.S. 209, 221 (2005).  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin v. Conner*, 515 U.S. at 484, 487.  Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts.  The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct.  *Id*. ¶ DDDD.  Disobeying a Direct Order is a Class II misconduct, *see id.*, Attach B, while Smuggling is a Class I misconduct, *see id.*, Attach A.

Plaintiff does not indicate whether he was found guilty of these misconducts.  However, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271,

273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).  Plaintiff does not allege that either misconduct had any fact on the duration of his sentence.

Plaintiff is serving sentences imposed in 2011 for crimes committed in 2009. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=718470 (last accessed Feb. 4, 2025).  A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction.  *See* Mich. Comp. Laws § 800.34.  Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2).  It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination."  *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, no misconduct conviction could have impacted the duration of Plaintiff's sentence.

Furthermore, Plaintiff does not allege any facts suggesting that any misconduct conviction resulted in an "atypical and significant hardship."  *See Sandin*, 515 U.S. at 487.  Plaintiff fails to allege any facts whatsoever regarding what sanctions, if any, he received because of the misconduct reports.  For these reasons,

Plaintiff fails to state Fourteenth Amendment procedural due process claims based upon the alleged false misconducts.[4]

### 2.    Claims Related to Plaintiff's Written Complaints and Grievances

Plaintiff faults several Defendants for failing to adequately handle and respond to his grievances and complaints.  As discussed above, § 1983 liability may not be imposed simply because a Defendant denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee*, 199 F.3d at 300.

Moreover, Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due

---

[4] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff. Moreover, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claims will be dismissed.

process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the administrative grievance process, Defendants' conduct did not deprive Plaintiff of due process.

### F. Claims Regarding the Handling of PREA Complaints

Plaintiff claims that several Defendants failed to adequately investigate and handle his PREA complaints regarding Defendant Minthorn's comments. Plaintiff, however, "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such

a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at \*14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at \*5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Plaintiff's claims pursuant to the PREA will, therefore, be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Simpson, Carlson, Bolton, Negrinell, Arsenalt, Huss and Schroeder will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Minthorn: all official capacity claims, Eighth and Fourteenth Amendment claims, any claims under the PREA, and Plaintiff's First Amendment claims other than a claim for First Amendment retaliation based upon the July 28, 2022, misconduct report for "smuggling." Plaintiff's First Amendment retaliation claim against Defendant Minthorn individually related to the July 28, 2022, misconduct report for "smuggling" remains in the case.

An order consistent with this opinion will be entered.

Dated:  February 5, 2025          /s/ Phillip J. Green
                                  PHILLIP J. GREEN
                                  United States Magistrate Judge

28